# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Rock US Holdings Inc., et al.,[1] | ) Case No. 10-12892 (PJW) |
| Debtors. | ) (Joint Administration Requested) |

## DEBTORS' APPLICATION TO ASSUME
## PRE-PETITION REPRESENTATION LETTERS AND TO
## EMPLOY STUDLEY, INC. AS REAL ESTATE BROKER *NUNC PRO TUNC*
## TO PETITION DATE PURSUANT TO 11 U.S.C. SECTIONS 327(A), 328(A) AND 365(A)

Rock US Holdings, Inc., Rock US Investments LLC, Rock New York (100-104 Fifth Avenue) LLC and Rock New York (183 Madison Avenue) LLC, the above captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, file this application (the "Application") respectfully seeking the entry of an order pursuant to sections 327(a), 328(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to retain and employ real estate broker, Studley, Inc. ("Studley"), during the pendency of these Chapter 11 cases upon the terms and conditions summarized herein, and as further set forth in the representation agreements, attached as exhibits to the Declaration of Woody Heller (attached as Exhibit A hereto, the "Heller Declaration").

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: (i) Rock US Holdings Inc. (4051); (ii) Rock US Investments LLC (5255); (iii) Rock New York (100-104 Fifth Avenue) LLC (9477); and (iv) Rock New York (183 Madison Avenue) LLC (4817). The address for each Debtor is: 183 Madison Avenue, Suite 617, New York NY 10016.

{BAY:01629114v2}

## JURISDICTION, VENUE AND STATUTORY PREDICATES

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of the bankruptcy estate herein, and accordingly, this is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2)(A) and (O), among other applicable provisions. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The relief sought herein is requested pursuant to the provisions of sections 327 and 325 of the Bankruptcy Code. No trustee, examiner, or other statutory committee has been appointed in these Chapter 11 cases.

## BACKGROUND

1. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Bankruptcy Code. The Debtors remain in possession of their estates and continue to operate and manage their business affairs.

2. The Debtors' primary assets are two commercial office buildings in Manhattan located at 100-104 Fifth Avenue (the "Fifth Avenue Property") and 183 Madison Avenue (the "Madison Avenue Property", and together with the Fifth Avenue Property, the "Properties"). The Debtors' cases were filed as "prepackaged" Chapter 11 cases (collectively, the "Cases"), in contemplation of a process for the sale of the Properties and related relief necessary to effectuate that process and maximize returns for creditors.

3. Prior to the Petition Date, on June 2, 2010, Studley entered into a representation agreement (the "Rock Madison Avenue Agreement") with Rock New York (183 Madison Avenue) LLC ("Rock Madison Avenue") to provide exclusive brokerage services to dispose of the Madison Avenue Property. On the same day, Studley entered in a similar agreement (the "Rock Fifth Avenue Agreement", and, together with the Rock Madison Avenue Agreement, the "Agreements") with Rock New York (100-104 Fifth Avenue) LLC ("Rock Fifth Avenue",

2

together, with Rock Madison Avenue, the "Sellers") to provide exclusive brokerage services to dispose of the Fifth Avenue Property. The term of each of the Agreement is six months from the execution date, provided that the parties may extend the term of the respective Agreements for an additional six month period by mutual agreement.

## APPLICATION

4. By this Application, the Debtors seek to assume the Agreements, and to employ and retain Studley for the purpose of assisting the Debtors with the marketing and sale of the Properties in these Cases. Accordingly, the Debtors respectfully request entry of an order pursuant to sections 327(a), 328(a) and 365(a) of the Bankruptcy Code authorizing the Debtors to assume the Agreements and to employ and retain Studley as a professional to perform the services as set forth in the Agreements and described below for the benefit of the Debtors' estates.

5. The Debtors believe that Studley is well-qualified to represent and assist them in connection with the marketing and sale of the Properties, and that the retention of Studley is necessary and in the best interests of the Debtors, their estates, and their creditors.

6. Studley is a major commercial real estate services firm with over 300 professionals in 19 offices nationally. Through Studley's 2006 merger with AOS, a French real estate services firm, the company also has presence in 10 countries in Europe and North Africa; AOS employs over 400 people across 13 offices in those regions. The combined firm's suite of services includes tenant representation, capital transactions, structured finance, project management and corporate real estate services.

7. Studley's New York-based Capital Transactions Group is headed by Executive Managing Director Woody Heller. During his nearly 30 year career, Mr. Heller has handled the

3

sale of over $6 billion of real estate in New York City. He is a two-time winner of the Real Estate Board of New York's ("REBNY") Most Ingenious Deal of the Year Award and he is the Chairman of REBNY's Sales Brokers Committee. His local transactional history includes many prewar office buildings, including the Chrysler Building, One Park Avenue, Two Park Avenue, 261 Fifth Avenue, 125 Park Avenue, the office condominium at 110 East 42nd Street, 130 Fifth Avenue, and 730 Broadway, that are proximate and comparable to the Properties.

8. Pursuant to the terms of the Agreements,[2] Studley has the exclusive right to secure a purchaser for, and to bring about a sale of, the Properties. The marketing and sale of these properties is unusually complex for several reasons. The parent of the Debtors, Rock Joint Ventures Limited, is insolvent, and is in formal administration proceedings in the United Kingdom. The Debtors, also insolvent, require a prompt sale of their assets. The Rock Madison Avenue Property is purportedly encumbered by an alleged "right of first refusal" in favor of a prior manager of the such property. The Fifth Avenue Property is encumbered by a right of first offer contained in the condominium declaration that governs the two condominiums located on such property (Rock Fifth Avenue owns the upper "office" condominium and an unrelated third party owns the lower "retail" condominium). Effectuating a marketing and sale process around the overhang of these encumbrances without unduly discouraging buyers has been a complex and delicate process handled with great skill by Studley.

9. Prior to the Petition Date (a) Studley presented to the Sellers all bona fide offers for the Properties and (b) Studley conducted all negotiations related to such offers, in all cases under the Sellers' supervision, direction, and control, with such participation by the Sellers and

---

[2] The summary of the respective Agreements in this Declaration is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the respective Agreements are inconsistent with such summary, the terms of the respective Agreements shall control.

4

the Sellers' counsel as the Sellers direct.

10. As a result of Studley's marketing and sale process for the Properties, the Sellers have been able to sign a contract for sale (the "Madison Avenue APA") of the Madison Avenue Property with Rigby 183 LLC (the "Madison Avenue Purchaser"), and a contract for sale for the Fifth Avenue Property (the "Fifth Avenue APA") with 100-104 Fifth, LLC (the "Fifth Avenue Purchaser").

11. As a result of Studley's marketing and sale process for the Properties, the Sellers have been able to sign a contract for sale of the Madison Avenue Property with Rigby 183 LLC, and a back-up contract for sale for the Fifth Avenue Property with 100-104 Fifth, LLC.

12. During the pre-petition process of marketing the Properties, Studley's Capital Transactions group contacted approximately 675 individual investors at approximately 500 firms in 21 countries on 5 continents. On Rock Madison Avenue, over 162 groups executed confidentiality agreements to receive offering materials and 59 groups toured the property over 70 times. On Rock Fifth Avenue, 163 groups executed confidentiality agreements to receive offering materials and 58 groups toured the property over 70 times. The offerings were referenced in articles in the *New York Post*, *Estates Gazette* (a major United Kingdom industry magazine), *The Real Deal*, *The Observer* and numerous real estate websites.

13. As part of the sales marketing campaign, the Debtors, through Studley, conducted several rounds of bidding for each of the Properties.

14. The deadline for the first round of bids for each of the Properties was July 22, 2010, approximately five weeks after potential bidders were first contacted (the "First Bid Deadline").

15. On or before the First Bid Deadline, in addition to 5 verbal indications of interest

5

on the Madison Avenue Property and 7 verbal indications of interest on the Fifth Avenue Property, there were over 20 written offers submitted for each of the Properties.

16. Following the First Bid Deadline, Studley, in consultation with the Debtors, the Administrators[3] and the Bank, selected 5 of the leading (highest, best and most viable) bidders for the Properties. Thereafter, the leading bidders were each provided with a form of an Agreement of Sale and Purchase and invited to participate in a second, and anticipated final, round of bidding for the Properties. The deadline for the second round bids was set for August 19, 2010 (the "**Second Bid Deadline**").

17. As part of the second round of bidding, bidders were expected to submit a mark-up of the form Agreement of Sale and Purchase that had been provided by the Debtors, complete all due diligence, and submit final, binding bids not contingent on financing.

18. Prior to the Second Bid Deadline, the Debtors received comments to the form Agreement of Sale and Purchase from the bidders and made certain revisions to the form agreement based on such comments.

19. As part of this process, bidders insisted that the form of the Agreement of Sale and Purchase provide for certain bid incentives which are the subject of this Motion.

20. With respect to the Madison Avenue Property, the result of the second round bidding was that two bidders emerged from the group of bidders with very strong bids. Thereafter, the Debtors continued to negotiate the terms and conditions of an Agreement of Sale and Purchase with these two bidders and ultimately determined that the Madison Avenue

---

[3] As indicated above, Rock Joint Ventures Limited, the ultimate parent company of both Rock Fifth Avenue and Rock Madison Avenue, is currently in administration in the United Kingdom. Peter Spratt, Laurie Manson, and Bruce Cartwright, partners of PricewaterhouseCoopers, have been appointed joint administrators (the "Administrators") to manage and run Rock Joint Ventures Limited on behalf of its creditors.

Purchaser had offered the highest and best bid for the Madison Avenue Property.

21. On August 26, 2010, the Debtors entered into the Madison Avenue APA with the Madison Avenue Purchaser for the sale of the Madison Avenue Property for a purchase price of $75,244,114.00.

22. With respect the Fifth Avenue Property, based on their negotiations with bidders, the Debtors, in consultation with the Administrators and the Bank, determined to have a third round of bidding for the Fifth Avenue Property. Accordingly, a third round of bidding for the Fifth Avenue Property was convened and bid deadline for the third round of bidding was set for September 13, 2010.

23. Following the third round of bidding for the Fifth Avenue Property, the Debtors, in consultation with the Administrators and the Bank, determined that the bid of the Fifth Avenue Purchaser was the highest and best bid for the Fifth Avenue Property.

24. On September 14, 2010, the Debtors entered into the Fifth Avenue APA with the Fifth Avenue Purchaser for the sale of the Fifth Avenue Property for a purchase price of $93,500,000.00.

### **Disclosures of Studley**

25. Pursuant to the Heller Declaration, Studley is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that Studley, its principals, and other employees except as otherwise set forth herein:

   a) are not creditors, equity security holders, or insiders of the Debtors;

   b) are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

   c) do not have interests materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect

relationship to, connection with, or interest in, the Debtors or for any other reason.

26. In preparation for this Application, a list was provided by the Debtors to Studley (the "Conflicts Check List") of (i) all entities and key persons affiliated with or related to the Debtors, (ii) professionals retained by the Debtors in these Cases, (iii) key creditors of the Debtors and their respective counsel and (iv) certain other parties in interest in Cases and their respective counsel. The Conflicts Check List is attached hereto as Exhibit B.

27. As set forth in the Heller Declaration, to the best of Studley's knowledge and information, after a review of the Conflicts Check List and Studley's records conducted at Woody Heller's direction, Studley has not represented any entity on the Conflicts Check List in connection with any matter involving the Debtors. Through Studley's national tenant representation efforts, Studley has represented PricewaterhouseCoopers, Jones Day, Citibank and Capital One on lease matters wholly unrelated to the Cases.

28. According to the Heller Declaration, there is no connection or interest (as such terms are used in section 101(14) of the Bankruptcy Code and Bankruptcy Rule 2014(a) between Studley and the United States Trustee or any person employed in the Office of the United States Trustee.

### Professional Compensation and Employment Terms

29. Pursuant to the terms of the Agreements, Studley will receive a commission upon sale of either of the Properties. In summary, the compensation scheme as set forth in the Madison Avenue Agreement is as follows:

> If, during the term of this agreement, the Seller's interest in the Property is sold or otherwise transferred to any third party for consideration, Seller shall pay Studley at closing a commission equal to the sum of : (i) 0.5% of the gross purchase price and consideration tendered for the Property up to $72,000,000; (ii) 1% of that portion of the gross purchase price and consideration tendered for the Property above $72,000,000 but less than or equal to $74,250,000; (iii) 2% of that portion of the gross purchase price and

consideration tendered for the Property above $74,250,000 but less than or equal to $76,500,000; and (iv) 2.5% of that portion of the gross purchase price and consideration tendered for the Property above $76,500,000.

The compensation scheme as set forth in the Fifth Avenue Agreement is as follows:

> If, during the term of this agreement, the Seller's interest in the Property is sold or otherwise transferred to any third party for consideration, Seller shall pay Studley at closing a commission equal to the sum of : (i) 0.5% of the gross purchase price and consideration tendered for the Property up to $88,000,000; (ii) 1% of that portion of the gross purchase price and consideration tendered for the Property above $88,000,000 but less than or equal to $90,750,000; (iii) 2% of that portion of the gross purchase price and consideration tendered for the Property above $90,750,000 but less than or equal to $93,500,000; and (iv) 2.5% of that portion of the gross purchase price and consideration tendered for the Property above $93,500,000.

30. No agreement exists between Studley and any other person or entity for the sharing of compensation to be received by Studley in connection with services rendered in these Cases.

## RELIEF REQUESTED

31. By this Motion, the Debtors respectfully seeking the entry of an order pursuant to sections 327(a), 328(a) and 365(a) authorizing the Debtors to assume the Agreements and to retain and employ Studley.

## APPLICABLE AUTHORITY

32. Section 365 of the Bankruptcy Code provides, in relevant part, as follows:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

33. Under section 365(a) of the Bankruptcy Code, a debtor may assume or reject an executory contract. An executory contract is a "contract under which the obligation of both the bankrupt and other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach...." Sharon Steel Corp. v. Nat'l Fuel Gas Distrib., 872 F.2D 36, 39-40 (3d Cir. 1989); see also In re Riodizio, Inc., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] contract is executory if each side must render performance, on account of an existing legal duty or to fulfill a condition, to obtain the benefit of the other party's performance.").

34. The Agreements have not expired or been terminated and the parties to the Agreements each have continuing material obligations under the terms of the Agreements. Pursuant to the Agreements, the Debtors have the obligation to pay to Studley fees in the event of a sale of one or both Properties, and Studley has the obligation to provide to the Debtors services relating to the marketing and sale of the Properties. Accordingly, the Debtors assert that the Agreements are executory and are assumable pursuant to section 365(a) of the Bankruptcy Code.

## NO PREVIOUS REQUEST

35. No previous request for the relief sought herein has been made to this or any other court.

## NOTICE

36. The Debtors have provided notice of this Motion to (i) the Office of the United States Trustee; (ii) the creditors listed on the Debtors' Consolidated List of Creditors Holding 20 Largest Unsecured Claims; (iii) the Administrators; (iv) Kaye Scholer LLC, 70 W. Madison, Ste. 4100, Chicago, Illinois 60602, Attn: D. Tyler Nurnberg and Nicholas J. Cremona, counsel for the Bank of Scotland plc; (v) Scott Pudalov and Alan Wildes and their respective counsel; and (vi) all other parties having requested notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no other and further notice of this Motion is necessary or required.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Heller Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, (a) authorizing and approving the Debtors to assume the Agreements and to retain Studley as their real estate broker in the Cases on the terms and conditions set forth in the Agreements and herein and (b) granting such other and further relief as is just and proper.

Rock US Holdings, Inc.,
a Delaware corporation

By: _____
Its:        Michael L. Brody
    Director and Senior Vice President

Rock US Investments LLC,
a Delaware limited liability corporation

By: _____
Its:        Michael L. Brody
    Director and Senior Vice President

Rock New York (100-104 Fifth Avenue) LLC,
a Delaware limited liability corporation

By: _____
         Michael L. Brody
Its: Director and Senior Vice President

Rock New York (183 Madison Avenue) LLC,
a Delaware limited liability corporation

By: _____
Its:        Michael L. Brody
    Director and Senior Vice President